704 S.E.2d 650

**Charles L. JOHNSON, dependent son of Louis E. Johnson, deceased, Appellant**

v.

**WEST VIRGINIA OFFICE OF the IN-SURANCE COMMISSIONER, and Foote Mineral Company, Appellees.**

No. 35382.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 12, 2010.

Decided Nov. 18, 2010.

Edwin H. Pancake, Esq., Maroney, Williams, Weaver & Pancake, Charleston, WV, for Appellant.

Karin L. Weingart, Esq., Spilman, Thomas & Battle, Charleston, WV, for Foote Mineral Company.

David L. Stuart, Esq., Workers' Compensation Litigation Division, Charleston, WV, for the Office of the Insurance Commissioner as Administrator of the Old Fund.

PER CURIAM:

This workers' compensation claim is before this Court upon the appeal of Charles L. Johnson from the September 17, 2008, order of the West Virginia Workers' Compensation Board of Review, which affirmed the administrative termination of his dependents' death benefits.

Upon review, this Court is of the opinion that Charles L. Johnson has a statutory right under the West Virginia Workers' Compensation Act to the continuation of his dependents' death benefits and that the termination of benefits constituted error. Accordingly, the order of the Workers' Compensation Board of Review dated September 17, 2008, in claim no. 840069749, Workers' Compensation Board of Review no. 2040452, is reversed, and this claim is remanded to the Board of Review for the entry of an order reinstating Charles L. Johnson's dependents' death benefits retroactive to the date the benefits were terminated.[1]

## I.

### Factual and Procedural Background

Louis E. Johnson, Charles' father, worked for Foote Mineral Company as a furnace operator for 31 years. There is voluminous evidence in the record demonstrating that Charles was the dependent invalid child of Louis E. Johnson. Charles suffers from schizophrenia, a chronic disabling disease.[2]

---

1. The parties have informed this Court that, in August 2008, a separate precautionary administrative proceeding was initiated on behalf of Charles L. Johnson to secure dependents' death benefits. Inasmuch as this Court now directs reinstatement of Charles' dependents' death benefits, the new proceeding is moot.

2. For example, in reports dated August 22, 2001, and July 12, 2002, Dr. Ali Salim, M.D., of the Woodland Center in Pomeroy, Ohio, stated that Charles suffers from "schizophrenia resulting in severe thought disorganization, delusion and hallucination interfering in his judgment and insight." Thereafter, on September 2, 2003, Dr. L. Spetie, M.D., completed a Workers' Compensa-

In 1989, Louis E. Johnson died of lung cancer. In 1990, Anna R. Johnson, the wife of Louis filed an application for workers' compensation "fatal dependents' death benefits." She contended that her husband's death was materially contributed to by occupational pneumoconiosis, and, therefore, she was entitled to death benefits.

Whether by mistake or for reasons unexplained in the record, the word "none" was written on the 1990 application in reference to the identity of any surviving dependent children. As *W.Va.Code*, 23-4-10 [1978], provides in part:

> [I]f death results from occupational pneumoconiosis or from any other occupational disease, the benefits shall be in the amounts and to the persons as follows: * * * [ (b)(1)] A dependent widow or widower until death or remarriage of such widow or widower, and any child or children dependent upon the decedent * * * or if an *invalid child* to continue as long as such child remains an invalid. All such persons shall be jointly entitled to the amount of benefits payable as a result of [the] employee's death.

In subsection (d) of that statute, the word "dependent" is defined to include an invalid child "who, at the time of the injury causing death, is dependent in whole or part for his or her support upon the earnings of the employee[.]" [3]

Although an order was entered by the Workers' Compensation Commissioner on October 30, 1990, holding the claim compensable on a non-medical basis, the application for dependents' death benefits was subsequently rejected on the ground that Louis E.

Johnson's death was not connected to his work-related occupational pneumoconiosis. On June 18, 2002, however, the Board of Review reversed and granted benefits on the basis that occupational pneumoconiosis materially contributed to Louis' death.[4] The employer's appeal from the Board of Review was refused by this Court on February 11, 2003.

Anna R. Johnson died on April 14, 2000, prior to the granting of dependents' death benefits by the Board of Review. In her Will, Anna named her daughter, Lois J. Dudding, Executrix and directed her to hold various assets of the Estate for the use and benefit of Charles and to provide him with the necessities of life. Subsequently, by letter dated July 22, 2002, counsel informed the Workers' Compensation Commissioner that Anna R. Johnson died and that Charles L. Johnson: (1) was a dependent invalid son of Louis E. Johnson, (2) a substitute party under the 1990 application for dependents' death benefits and (3) entitled to payment of benefits, in care of Lois J. Dudding. Attachments to the letter included: (1) a copy of Anna's death certificate and Will, (2) a copy of Charles' birth certificate and (3) a copy of the medical reports of Dr. Salim stating that Charles suffers from a lifelong psychiatric disorder and requires supervision. *See*, n. 2, *supra.* A copy of the letter was sent notifying the employer.

On October 30, 2002, a Workers' Compensation pay order was issued directing the employer to pay Lois J. Dudding $277,060.06, representing the period December 14, 1989, (immediately after the death of Louis E.

---

tion medical verification form and stated that Charles is diagnosed with "schizophrenia, undifferentiated type." Dr. Spetie also stated that schizophrenia is a chronic, lifelong illness. Both physicians indicated in their reports that Charles is in need of supervision.

3. Subsequent amendments to *W.Va.Code*, 23-4-10 [1978], are not relevant to this claim.

4. The record before this Court contains several unexplained matters. The initial rejection of Anna R. Johnson's 1990 application for dependents' death benefits was entered by the Workers' Compensation Commissioner on May 15, 1991. However, it was not until April 9, 2001,

nearly ten years later, that the rejection was affirmed on appeal by the Administrative Law Judge, after which, in 2002, the Board of Review reversed. As acknowledged in the brief filed in this Court by the Insurance Commissioner, the reason for the delay is "not readily apparent from the claim file," even though the claimant filed a protest on May 20, 1991, to the May 15, 1991, order. Under the circumstances herein, the unexplained ten year delay, in conjunction with the subsequent granting of benefits in 2002 upon Anna's 1990 application, becomes a component, or mitigating factor, in this claim to be viewed favorably to the reinstatement of benefits to Charles L. Johnson.

Johnson) through November 30, 2002.[5] Thereafter, pay orders were issued on a monthly basis for the benefit of Charles. On July 22, 2003, Lois J. Dudding completed a Workers' Compensation form concerning the continuation of benefits on which she named Charles as a dependent of Louis E. Johnson. Later, on September 2, 2003, Dr. Spetie completed a Workers' Compensation medical verification form and stated that Charles is diagnosed with schizophrenia and is in need of supervision. *See,* n. 2, *supra.* Charles continued to receive his monthly benefits.

The employer, Foote Mineral Company, began self-administering its workers' compensation claims in July 2004. *W.Va.Code,* 23–2–9(b)(1) [2003] (Self-insured employers shall, effective July 1, 2004, administer their own claims.).[6] Foote Mineral Company hired Acordia Employers Service as its third-party administrator to process the workers' compensation claims filed by Foote Mineral's employees.

On February 17, 2006, the employer's third-party administrator, Acordia Employers Service, issued a notification of termination of Charles' dependents' death benefits. The notification, sent to Charles in care of Lois J. Dudding, stated that, since there was no evidence that Charles was a dependent at the time of Louis E. Johnson's death and that the application filed by Anna R. Johnson in 1990 indicated that there were no dependent children, a termination of Charles' benefits would be pursued. Thereafter, on March 14, 2006, the employer's third-party administrator entered an order terminating Charles' dependents' death benefits.

A protest was filed, and the evidence before the Administrative Law Judge included: (1) Charles' birth certificate; (2) the September 2, 2003, medical verification form completed by Dr. Spetie; (3) the deposition of Lois J. Dudding who testified that Charles is an invalid who lived with his parents until their deaths, and currently lives with her, and that Charles had been drawing Social Security dependents' benefits since 1979;[7] (4) the November 1, 2006, report of Dr. Shaheen, a psychiatrist, stating that Charles was dependent and under the care of his father until his father died in 1989; (5) the Wills of Louis and Anna Johnson providing for the care and support of Charles through Lois J. Dudding; (6) the November 26, 2002, appointment of Lois J. Dudding as guardian of Charles by the Mason County Circuit Court Mental Hygiene Commissioner; and (7) a December 18, 1989, Social Security form on which Anna R. Johnson listed Charles as a dependent son. Nevertheless, on February 8, 2008, the Administrative Law Judge affirmed the termination of benefits, observing, *inter alia,* that the order granting dependents' death benefits "was based on the application filed in 1990 which listed only Anna Johnson as a dependent of Louis E. Johnson."

The decision of the Administrative Law Judge was affirmed by the Board of Review on September 17, 2008, and the appeal to this Court followed.

## II.

### Standard of Review

The employer, Foote Mineral Company, through its third-party administrator, terminated Charles L. Johnson's benefits on March 14, 2006, because he was not named on the workers' compensation application as a dependent child of the deceased employee, Louis E. Johnson. The termination was affirmed by the Administrative Law Judge on February 8, 2008, and by the Board of Re-

---

5. According to the employer, the portion of the pay order concerning the period from the death of Louis E. Johnson in 1989 up to Anna R. Johnson's death in 2000, reflects the benefits Anna would have received had the award been granted by the Board of Review while she was alive.

6. Subsequent amendments to *W.Va.Code,* 23–2–9(b)(1) [2003], are not relevant to this claim.

7. In her deposition, Lois J. Dudding testified that she had no idea why Anna R. Johnson wrote "none" on the 1990 application in reference to the identity of any surviving dependent children. As Lois J. Dudding surmised:

> She was probably in a state of mind when my father passed away. She didn't really know-understand the question, I don't think, and she probably looks as [sic] Charles as not being a dependent all of his life, you know. He was her son. He was her baby.

view on September 17, 2008. The standard of review to be applied by this Court is, therefore, found in *W.Va.Code*, 23–5–15(c) [2005], which states in part:

> If the decision of the [Workers' Compensation Board of Review] represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

In this claim, the principal facts are not in dispute, and the termination of Charles' benefits and the administrative affirmation of the termination involve questions of law. Accordingly, in considering whether the decision of the Board of Review should be reversed or modified, within the context of *W.Va.Code*, 23–5–15(c) [2005], any legal conclusions made below must be reviewed by this Court *de novo*. Although decided under prior workers' compensation statutes, the following principle set forth in syllabus point 4 of *Emmel v. State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965), remains the same: "An order of the workers' compensation appeal board, approving an order of the state compensation commissioner, will be reversed by this Court on appeal, where the legal conclusions of the appeal board are erroneous." *Lovas v. Consolidation Coal Company*, 222 W.Va. 91, 95, 662 S.E.2d 645, 649 (2008) (Conclusions of law of the Workers' Compensation Board of Review "are subjected to *de novo* inspection."); *Dodson v. Workers' Compensation Division*, 210 W.Va. 636, 641, 558 S.E.2d 635, 640 (2001) (This Court applies a *de novo* standard of review to questions of law arising in the context of Workers' Compensation Appeal Board decisions.); *Rhodes v. Workers' Compensation Division*, 209 W.Va. 8, 12, 543 S.E.2d 289, 293 (2000) (This Court reviews *de novo* questions of law decided by the Workers' Compensation Appeal Board.).

## III.

### Discussion

As long recognized, the right to workers' compensation benefits is wholly statutory. Syl. pt. 2, in part, *Dunlap v. State Compensation Director*, 149 W.Va. 266, 140 S.E.2d 448 (1965). An important aspect of that maxim relevant to this claim was previously observed by this Court in *Gibson v. State Compensation Commissioner*, 127 W.Va. 97, 31 S.E.2d 555 (1944), syllabus point 1 of which states: "A claim for death benefits, provided for by Code, 23–4–10, is separate and distinct from an injured employee's claim for disability benefits." Syl. pt. 1, *Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975). *See also*, syl. pt. 2, *Hubbard v. SWCC and Pageton Coal Co.*, 170 W.Va. 572, 295 S.E.2d 659 (1981) ("A dependent's claim for death benefits is separate and distinct from the claim of the injured employee."). In that regard, syllabus point 1 of *Harding v. State Compensation Commissioner*, 114 W.Va. 817, 174 S.E. 328 (1934), recognizes that "[t]he question of dependency under the Workmen's Compensation Law of West Virginia is not to be determined by ordinary legal or ethical conceptions, but by the classification of dependents made by that law itself."

As stated above, the Legislature provided in *W.Va.Code*, 23–4–10 [1978], that in the case of death from occupational pneumoconiosis or any other occupational disease, those entitled to fatal dependents' death benefits include a dependent widow and an invalid child, such persons to be "jointly entitled" to the benefits. The statute clarifies that the word "dependent" is defined to include an invalid child "who, at the time of the injury causing death, is dependent in whole or part for his or her support upon the earnings of the employee[.]" Of course, the question of dependency in any particular claim can involve a question of fact. However, "where the evidence is all certified and there is no conflict, a question of law, and not of fact, may be thus presented." Syl. pt. 3, *Poccardi*

*v. State Compensation Commissioner,* 79 W.Va. 684, 91 S.E. 663 (1917).

The evidence of record demonstrates that Charles L. Johnson was dependent for his support upon the earnings of Louis E. Johnson at the time of Louis E. Johnson's death and continues to be an "invalid child" now cared for by Lois J. Dudding. The medical reports, medical verification, the Wills of Charles' parents, the documentation concerning Social Security dependents' disability benefits, the Mason County guardianship and the deposition of Lois J. Dudding support the fact of Charles' lifelong psychiatric disorder and resulting dependency. Consequently, the question of whether Charles' dependents' death benefits should be reinstated is procedural in nature.

As acknowledged by the Insurance Commissioner, the record does not explain why nearly ten years passed between Anna R. Johnson's 1991 protest of the initial rejection of her application and the 2001 decision of the Administrative Law Judge affirming the rejection. *See,* n. 4, *supra.* During that long delay, Anna died, and it was not until later, on June 18, 2002, that her application for benefits was approved. Thereafter, the Workers' Compensation Commissioner and the employer were informed that Charles is a dependent, a substitute party, and entitled to dependents' death benefits. The employer consistently paid Charles the benefits for a number of years, from October 2002 until his benefits were terminated in 2006.

■ Whether the relevant date is October 30, 2002, when the first pay order was issued on behalf of Charles, or February 11, 2003, when this Court refused the employer's appeal from the June 18, 2002, award of benefits, the applicable statute, *W.Va.Code,* 23–5–1 [1995], provided for the correction, within 180 days, of orders resulting from a mistake or clerical error. That provision was later amended to permit the correction of "orders or decisions" within two years. *See also,*

*W.Va.Code,* 23–5–4 [1995], (authorizing an employer to seek a modification of an award). Although, as the Insurance Commissioner indicates, a pay order does not ordinarily fall within the context of *W.Va.Code,* 23–5–1, a decision, apparently not reduced to writing, was necessarily made substituting Charles for Anna R. Johnson. That decision resulted in the issuance of the initial pay order in the substantial amount of $277,060.06. That amount and subsequent monthly pay orders were paid by the employer for the benefit of Charles. Thus, this Court finds persuasive the contention of the Insurance Commissioner that the employer, during those years, never sought the remedy provided under *W.Va.Code,* 23–5–1, when it knew that Charles L. Johnson was a workers' compensation dependent of Louis E. Johnson. After the first pay order in 2002, Lois J. Dudding, on July 22, 2003, completed the Workers' Compensation form concerning the continuation of benefits on which she named Charles as a dependent of Louis E. Johnson. Later, on September 2, 2003, Dr. Spetie completed a Workers' Compensation medical verification form and stated that Charles is diagnosed with schizophrenia and is in need of supervision.

Under the circumstances of this case, therefore, Charles is entitled to a continuation of the dependents' death benefits to which he was jointly entitled with Anna R. Johnson.[8]

## IV.

### Conclusion

This Court is of the opinion that Charles L. Johnson has a statutory right under the West Virginia Workers' Compensation Act to the continuation of his benefits and that the termination of benefits was erroneous. Accordingly, the order of the Workers' Compensation Board of Review dated September

---

8. As *W.Va.Code,* 23–5–13 [1995], states in part:

It is the policy of this chapter that the rights of claimants for workers' compensation be determined as speedily and expeditiously as possible to the end that those incapacitated by injuries and the dependents of deceased workers may receive benefits as quickly as possible in view of the severe economic hardships which immediately befall the families of injured or deceased workers. * * * It is also the policy of this chapter to prohibit the denial of just claims of injured or deceased workers or their dependents on technicalities.

17, 2008, in Claim No. 840069749, Workers' Compensation Board of Review No. 2040452, is reversed, and this claim is remanded to the Board of Review for the entry of an order reinstating Charles L. Johnson's dependents' death benefits retroactive to the date the benefits were terminated.

Reversed and Remanded.